IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES ZURAF

      Plaintiff,

v.                                                                                                     CIVIL ACTION NO. 2:15-cv-559

CLEARVIEW EYE CARE, INC.,
      D/B/A COASTAL VISION,

RUSSELL A. BEACH,

SCOTT NILSSON,

JESSICA LIN-NILSSON,

      and

ABHNER R. WANG,

      Defendants.

## *MEMORANDUM OPINION & ORDER*

This matter is before the Court pursuant to a Motion to Dismiss filed by Defendants Clearview Eye Care, Inc., d/b/a Coastal Vision ("Clearview"), Russell A. Beach ("Beach"), Scott Nilsson ("Nilsson"), Jessica Lin-Nilsson ("Lin-Nilsson") and Abhner R. Wang ("Wang") (collectively, "Defendants"). Dkt. 4. Also before the Court are Defendants' Motion to Award Fees, Dkt. 6, and Plaintiff James Zuraf's ("Plaintiff" or "Zuraf") Cross Motion to Award Fees, Dkt. 13. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, Dkt. 4, **DENIES** Defendants' Motion to Award Fees, Dkt. 6, and **DENIES** Plaintiff's Motion to Award Fees, Dkt. 13. A hearing is unnecessary to resolve the instant Motions.

1

## I. BACKGROUND

### A. Factual Allegations

This action arises from Defendants' alleged wrongful termination of and failure to hire Plaintiff due to his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Compl. ¶ 11. Plaintiff was born on September 15, 1954, and he worked as a Virginia State Licensed Optician. Compl. ¶¶ 2, 20. In April 1997, "Dr. Hal W. Breedlove, O.D., P.C. operating under the trade name Coastal Vision Center ("Coastal Vision") hired Plaintiff as Practice Manager." Compl. ¶ 22. As Practice Manager, "Plaintiff managed the daily operations of Coastal Vision," and his "main duties included, but were not limited to: hiring and firing of staff, preparing payroll, handling human resources issues, negotiating and executing vendor contracts, purchasing frames, lenses, and equipment, and resolving patients' complaints." Compl. ¶¶ 24, 25. The Complaint alleges that Dr. Breedlove "was the only owner of Coastal Vision, but he employed Wang, S. Nilsson, and Lin-Nilsson as optometrists at his practice." Compl. ¶ 28. The Complaint further avers that "Defendants subjected Plaintiff to disparaging comments about his age." Compl. ¶ 30.

According to the Complaint, "[i]n or around May of 2013, Wang, S. Nilsson, Lin-Nilsson announced that they, together with Beach and Clearview, were purchasing Coastal Vision from Breedlove" and "introduced themselves as the 'new owners' of Coastal Vision to all employees, vendors and patients." Compl. ¶¶ 31, 32. Then, "[o]n or about August 16, 2013, Wang and Lin-Nilsson conducted a meeting with Plaintiff to discuss his employment under the new ownership of Coastal Vision. Wang and Lin-Nilsson stated that upon completion of the sale of the practice, Plaintiff would be terminated." Compl. ¶ 33. Plaintiff claims that he "stated he was interested in remaining with Coastal Vision in the capacity of an Optician at lower pay rate." Compl. ¶ 34.

2

The Complaint alleges that "[o]n or about August 16, 2013, Plaintiff applied for an Optician position." Compl. ¶ 35. Although "Wang stated that he would discuss the option of hiring Plaintiff as an Optician with the other owners, and that he would set up a meeting to interview Plaintiff," Compl. ¶ 36, "[o]n August 27, 2013, S. Nilsson informed Plaintiff that he would not be re-hired or considered for any position at Coastal Vision, including both the Practice Manager and Optician positions," Compl. ¶ 38.

Breedlove's sale of Coastal Vision to Clearview, Beach, Wang, S. Nilsson, and Lin-Nilsson occurred on or about September 6, 2013. Compl. ¶ 39. That same day, "Clearview, Beach, Wang, S. Nilsson, and Lin-Nilsson terminated Plaintiff." Compl. ¶ 40. According to the Complaint, "all of the employees of Coastal Vision, with the exception of Plaintiff, were interviewed by Wang, S. Nilsson, Lin-Nilsson, and Beach," and were not terminated. Compl. ¶¶ 43, 44. Both the Practice Manager position and the Optician position were "filled by a person who was substantially younger than Plaintiff." Compl. ¶¶ 71, 72.

The Complaint additionally alleges that "at the relevant times alleged herein, Defendants were operating either as Clearview Eye Care, Inc. or were operating as general partners." Compl. ¶ 4. Furthermore, "Clearview has at least 15 employees." Compl. ¶ 5. According to the Complaint, "Defendants qualify as an 'employer' as set forth in the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C.§§ 621 *et seq.*" Compl. ¶ 10. Plaintiff claims he "filed a Charge of Discrimination against Clearview Eye care, Inc. [sic] d/b/a Coastal Vision and its owners for the unlawful employment practices set forth herein with the United States Equal Employment Opportunity Commission ("EEOC") and did so within the required time limits specified by law and regulation." Compl. ¶ 16. The EEOC sent Plaintiff a Notice of Right to Sue on or about September 28, 2015. Compl. ¶ 17; Compl., Ex. 1. The Dismissal and Notice

of Right to Sue states that Plaintiff "may file a lawsuit against the respondent(s);" however, it does not appear that the Notice identified the respondent(s) by name. Compl., Ex. 1.

## B. Procedural History

Plaintiff filed the Complaint on December 23, 2015. Dkt. 1. On February 26, 2016, Defendants submitted the instant Motion to Dismiss and Motion to Award Fees. Dkts. 4, 6. Plaintiff responded in opposition to both motions on March 8, 2016. Dkts. 11, 12. Additionally, Plaintiff submitted a Cross Motion to Award Fees on March 8, 2016. Dkt. 13. Defendants replied on March 11, 2016. Dkts. 15, 16.

## II. STANDARD OF REVIEW

### i. *Motion to Dismiss*

Defendants base their Motion to Dismiss on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. 4. Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal if the court lacks subject matter jurisdiction over a claim or the cause of action as a whole. *See* Fed. R. Civ. P. 12(b)(1). In deciding such a motion, the Court assumes that all factual allegations in the complaint are true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the defendant challenges the factual basis for jurisdiction, the plaintiff bears the burden of proving proper subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or any other evidence submitted on the issue. *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts

4

are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff") (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). A complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." *Id.* Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the

complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### *ii. Motion to Award Fees*

A district court may issue sanctions and award fees under Federal Rule of Civil Procedure 11, Title 28 United States Code, Section 1927, and the court's inherent powers. *See, e.g., Royal Ins. v. Lynnhaven Marine Boatel, Inc.*, 216 F. Supp. 2d 562, 565–567 (E.D. Va. 2002). The parties argue that the Court should award fees in this case under its inherent powers and under 28 U.S.C. § 1927. *See* Dkt. 9; Dkt. 14.

Although "inherent powers must be exercised with restraint and discretion," the Supreme Court has noted that "there are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel . . . even though the so-called 'American Rule' prohibits fee shifting in most cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975)) (internal quotations omitted). Indeed, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (internal quotations and citations omitted). Thus, "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's

fees against the responsible party." *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)).

Similarly, 28, U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. As previously noted by this Court, "[t]he focus of § 1927 is on the attorneys' conduct of the litigation, rather than on the merits." *Royal*, 216 F. Supp. 2d at 566 (citing *DeBauche v. Trani*, 191 F.3d 499, 511–12 (4th Cir. 1999)). A "finding of bad faith is a necessary precondition to imposition of fees on an attorney under § 1927." *Royal*, 216 F. Supp. 2d at 566 (citing *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991)).

### III. ANALYSIS

Defendants argue that the "Complaint fails on its face, because: (1) the single named Respondent in the EEOC Charge of Discrimination is not any of the named Defendants, so Plaintiff has not exhausted his administrative remedies against the named Defendants; (2) Plaintiff cannot exhaust administrative remedies against the named Defendants, as Plaintiff is now out of time for filing an administrative charge against them; (3) the named individual Defendants cannot be the subject of an Age Discrimination in Employment Act claim; and (4) Plaintiff's Complaint fails to state a claim for wrongful termination or failure to hire." Dkt. 4 at 1-2.

A. **Plaintiff Failed to Exhaust His Administrative Remedies Against Defendants Beach, Nilsson, Lin-Nilsson, and Wang, but Plaintiff Did Exhaust His Administrative Remedies Against Defendant Clearview.**

Before bringing a lawsuit under the ADEA, a plaintiff first must file a charge alleging discrimination with the EEOC. *See* 29 U.S.C. § 626(d); *see also Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). If a plaintiff failed to file a proper charge with the EEOC or otherwise failed to exhaust his or her administrative remedies, the district court lacks subject matter jurisdiction over a subsequently-filed civil action that attempts to assert claims under the ADEA or Title VII. *E.g.*, *Jones*, 551 F.3d at 300–01 (citing *Vance v. Whirlpool Corp.*, 707 F.2d 483, 486–89 (4th Cir. 1983)).

The EEOC charge "frames the scope of future litigation." *Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005). Indeed, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit." *Id.* (quoting *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) (internal quotations omitted). However, since "lawyers do not typically complete the administrative charges . . . courts construe them liberally." *Chacko*, 429 F.3d at 509 (citing *Alvarado v. Bd. Of Trs. Of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). Even construing charges liberally, the United States Court of Appeals for the Fourth Circuit has held that "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. As noted by the Fourth Circuit in *Chacko*, the purposes requiring a plaintiff first to file a charge with the EEOC include providing notice to the employer of the alleged discrimination and encouraging

conciliation between the parties without judicial intervention. *Id.* at 510. Indeed, the notice "gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions" and additionally "prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning." *Id.* Therefore, in *Johnson v. Portfolio Recovery Associates, LLC*, this Court considered whether it possessed subject matter jurisdiction over an action that alleged retaliation if the plaintiff checked only the "race" – not "retaliation" – box on the EEOC charge. *See* 682 F. Supp. 2d 560, 571 (E.D. Va. 2009). This Court held that even if the plaintiff contacted "the EEOC investigator [to] request that the retaliation box of the charge form be checked, [the plaintiff's] actions do not indicate that the charge was formally amended so as to put the [d]efendant on notice of the claims raised against it and give [the] [d]efendant the opportunity to rebut the charges *during* the EEOC process." *Id.* at 572. This Court ultimately dismissed the plaintiff's retaliation claim for lack of subject matter jurisdiction. *Id.* at 577.

Similarly, the Fourth Circuit noted in *EEOC v. Am. Nat. Bank*, that if "the plaintiff names a defendant not named in the original charge filed with the EEOC," courts generally lack subject matter jurisdiction. 652 F.2d 1176, 1186 n.5 (4th Cir. 1981). However, there exist exceptions to this general rule, especially "where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process." *Id.* Accordingly, the District of Maryland considered individual defendants' claims that the plaintiff failed to exhaust his administrative remedies against them since the EEOC charge did not list the individual defendants' names but rather identified the Board of Education of Somerset County as the sole respondent. *Whittington v. Board of Educ. of Somerset County*, No. Civ.A. WMN–94–398, 1995 WL 17002152, at *10 (D. Md. June 2, 1995). However, because the plaintiff

"included an affidavit alleging discriminatory conduct by" one of the defendants, and since all the individual defendants "participated in the EEOC's investigation of the charge and submitted affidavits documenting their familiarity with the charge and their involvement in the investigation," the District of Maryland found that the individual defendants "had notice of Plaintiff's charge of discrimination and were afforded an opportunity to participate in conciliation." *Id.* Hence, since the court found "that the policies underlying Title VII's naming requirement [were] satisfied," the court denied the defendants' motion for summary judgment. *Id.*

Here, Defendants contend that Plaintiff failed to exhaust his administrative remedies against Defendants because the EEOC charge fails to name any Defendant as the "Respondent" in the EEOC charge. *See* Dkt. 8 at 2; *see also* Dkt. 8, Ex. 1. Instead of naming any Defendant, the charge lists Plaintiff's former employer, Coastal Vision, as the "Respondent." Dkt. 8, Ex. 1. In the particulars section, Plaintiff wrote "The company I worked for was sold to Dr. Nilson, Dr. Beach, and Dr. Wong September 6, 2013. I was discharged. I am older than the other employees hired by the new company. I was not given the opportunity for interview." *Id.* Handwritten below this paragraph appears, "Additional owner not listed, Dr. Lin." *Id.* The charge lists the earliest date of discrimination as August 16, 2013 and the latest date as September 6, 2013. *Id.*

It appears that although the EEOC sent notice of the charge to Dr. Scott Nilsson as owner of Coastal Vision on November 18, 2013, *see* Dkt. 11, Ex. D, the charge was amended on April 15, 2014 to identify only Coastal Vision, and not Dr. Nilsson, individually, as the respondent, *see* Dkt. 8, Ex. 1. Then, the EEOC sent notice to Attorney Melissa Howell on April 23, 2014. *See* Dkt. 11, Ex. D.

10

Plaintiff states that during the EEOC investigation, "it was established that 'Coastal Vision' was not a legal entity, but a trade name used by Clearview Eye Car, Inc. and the individual doctors Beach, Nilsson, Lin-Nilsson, and Wong." Dkt. 11 at 6. To support this assertion, Plaintiff provides the Court with an email dated August 31, 2015 from an EEOC federal investigator, Mr. Thil Hurley, to Attorney Howell. Dkt. 11, Ex. B. The email, however, states that "the correct Respondent is, in fact, Coastal Vision (and your clients) not Dr. Breedlove." *Id.* Investigator Hurley further clarified that "the allegation against your client is not for discharge but for failure to hire based on age." *Id.* Interestingly, the word "client" appears both as plural and as singular in Investigator Hurley's email. *Id.* However, it appears that at this time, Attorney Howell only represented a single client, Clearview Eye Car, Inc. *See* Dkt. 15, Ex. 2. Furthermore, Investigator Hurley informed Plaintiff that the "Commission has verified the correct identity of the Respondent and their position statement is due 16 Sep 2015." Dkt. 11, Ex. C. The position statement dated September 16, 2015 explicitly and unequivocally states that Attorney Howell's firm only "represents Respondent, Clearview Eye Care, Inc. ("Clearview" or the "Company")." Dkt. 15, Ex. 2. As noted in the position statement, Clearview began doing business as Coastal Vision on or about March 13, 2014. *Id.*

There is no evidence before the Court that Defendants Beach, Nilsson, Lin-Nilsson, or Wang had an opportunity to participate in the EEOC investigation or that they received notice of the amended charge dated April 15, 2014. As an initial matter, Drs. Wang and Nilsson's names are spelled incorrectly in the "particulars" section of the amended charge. *See* Dkt. 8, Ex. 1. Dr. Lin's name is handwritten on the document provided to the Court, and there is no evidence showing when Dr. Lin's name first appeared in the amended charge. Thus, as in *Johnson*, 682 F. Supp. 2d at 572, even if Plaintiff contacted the EEOC in an effort to include Dr. Lin's name in

the particulars field, there is no indication that such an informal amendment ever resulted in notice to Dr. Lin. Although notice concerning a presumably previously filed charge was sent to Dr. Nilsson as owner of Coastal Vision on or about November 18, 2013, the EEOC subsequently "removed Scott Nilsson's name from the Notice of Charge." Dkt. 15 at 2. Plaintiff claims that all "Defendants, through counsel, actively participated in conciliation process and submitted their official Position Statement." Dkt. 11 at 6–7. Yet, as noted above, the position statement clearly and unequivocally states that Attorney Howell only represented Clearview Eye Care, Inc., not Defendants Beach, Nilsson, Lin-Nilsson, or Wang. Dkt. 15, Ex. 2. Therefore, there is no evidence before this Court that Defendants Beach, Nilsson, Lin-Nilsson, or Wang participated in the EEOC process, unlike the ample evidence before the District of Maryland in *Whittington*, 1995 WL 17002152, at *10. The policies of notice and conciliation underlying the EEOC process outlined in *Chacko*, 429 F.3d at 510, simply were not met here with respect to Defendants Beach, Nilsson, Lin-Nilsson, or Wang. Defendant Clearview did, however, receive notice of the charge and did participate in the EEOC investigation. *See, e.g.*, Dkt. 15, Ex. 2.

Therefore, the Court **DISMISSES** the claims against Defendants Beach, Nilsson, Lin-Nilsson, and Wang for lack of subject matter jurisdiction. This Court possesses subject matter jurisdiction over Defendant Clearview, against whom Plaintiff exhausted his administrative remedies.

**B. Plaintiff Failed to State a Claim for Wrongful Discharge, but Plaintiff Successfully Stated a Claim for Failure to Hire.**

In *McDonnell Douglas Corp. v. Green*, the Supreme Court outlined general elements of a *prima facie* case of racial discrimination under Title VII. The Court held that a plaintiff may establish a *prima facie* case "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applications; (iii) that,

despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. 792, 802 (1973). The Court cautioned, however, that this "specification . . . of the *prima facie* proof required from respondent is not necessarily applicable in every respect to different factual situations." *Id.* n.13. In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court applied the framework set forth in *McDonnell Douglas* to ADEA claims. *See* 530 U.S. 133, 142 (2000).

However, the Supreme Court clarified in *Swierkiewicz v. Sorema N.A.* that the "*prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002). The Court noted that "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511. Therefore, no heightened pleading standard applies to claims made pursuant to the ADEA, though the alleged claims still must appear plausible from the face of the complaint. *E.g., Iqbal*, 556 U.S. at 678.

### i. Wrongful Discharge

The Complaint fails to allege sufficient facts upon which Plaintiff can base a plausible claim for wrongful discharge. The Complaint fails to identify any Defendant as Plaintiff's employer. Stating that "Defendants qualify as an 'employer' as set forth in the Age Discrimination in Employment Act of 1967," Compl. ¶ 10, merely articulates a legal conclusion and remains insufficient. As an initial matter, Plaintiff cannot assert wrongful discharge against individuals and/or entities that never employed him. Plaintiff claims in his brief that after "Breedlove sold Coastal Vision to Clearview, Beach, Wang, S. Nilsson, and Lin-Nilsson," Defendants "began operating Coastal Vision as the new co-owners" and subsequently terminated Plaintiff. Dkt. 11 at 12 (citing Compl. ¶¶ 39, 47, 40). However, the Complaint never contends

that Defendants terminated Plaintiff after buying Dr. Breedlove's practice. Rather, it states in one paragraph that Breedlove sold Coastal Vision on or about September 6, 2013, and it alleges in another paragraph that Defendants terminated Plaintiff on September 6, 2013. Compl. ¶¶ 39, 40. Additionally, the Complaint states that "Plaintiff was not employed by Dr. Hal W. Breedlove after September 6, 2013." Compl. ¶ 41. All of the alleged dates of discrimination outlined in the Complaint reference incidents that occurred prior to or on September 6, 2013. Therefore, without even having alleged that Defendants ever actually employed Plaintiff, Plaintiff's Complaint fails to allege facts that can support a reasonable inference that Defendants wrongfully discharged Plaintiff.

### ii. *Failure to Hire*

However, the Complaint sufficiently alleges that Defendants failed to hire Plaintiff. To establish a failure to hire claim, a plaintiff ultimately must prove "(1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination." *See Swierkiewicz*, 534 U.S. at 510 (citing *McDonnell Douglas*, 411 U.S. at 802). However, a plaintiff need not "plead facts establishing a *prima facie* case." *Id.* at 511. Rather, a plaintiff simply must plead facts that give the defendant "fair notice of the basis for [the] claims." *Id.* at 514 (noting that the complaint must satisfy the requirements of Rule 8(a)).

As noted above, the Complaint claims that Defendants Wang, S. Nilsson, Lin-Nilsson, and Beach "introduced themselves as the 'new owners' of Coastal Vision" on or about May of 2013, and that on or about September, 6, 2013, "Breedlove sold Coastal Vision to Clearview, Beach, Wang, S. Nilsson, and Lin-Nilsson." Compl. ¶¶ 32, 39. The Complaint avers that "Plaintiff stated that he was interested in remaining with Coastal Vision in the capacity of an

Optician at lower pay rate" and that "[o]n or about August 16, 2013, Plaintiff applied for an Optician position." Compl. ¶¶ 34, 35. The Complaint further alleges that "[o]n August 27, 2013, S. Nilsson informed Plaintiff that he would not be re-hired or considered for any position at Coastal Vision, including both the Practice Manager and Optician positions." Compl. ¶ 38. The Complaint also states that "Plaintiff was fifty-nine (59) years old" during this time, Compl. ¶ 42, and that "a substantially younger and less experience employee was promoted from Lab Technician to the Optician position that Plaintiff applied for," Compl. ¶ 46. These allegations are sufficient to allow the Court to infer that Defendants failed to hire Plaintiff for the Optician position due to his age, and they provide Defendants with fair notice of basis for Plaintiff's claims.

## C. The Court Declines to Impose Fees.

Defendants argue that the Court should award them fees under its inherent powers, since "Plaintiff's conduct in declining to amend or withdraw his Complaint is inexplicable and demonstrates bad faith." Dkt. 9 at 4–5. Plaintiff contends that "there is no evidence of bad faith, vexatious, wanton, or oppressive conduct on the part of the Plaintiff." Dkt. 12 at 4. Plaintiff also requests that the Court assess sanctions against Defendants' attorney under § 1927. Dkt. 14 at 7. Having reviewed the allegations by both parties, the Court **FINDS** that the claims do not rise to the level of bad faith necessary to justify an award of fees under either the Court's inherent powers or § 1927.

## IV. CONCLUSION

Therefore, for the reasons listed above, the Court **GRANTS** Defendants' 12(b)(1) Motion **IN PART**, as the Court lacks subject matter jurisdiction over any claims against Defendants Beach, Nilsson, Lin-Nilsson, and Wang. Because the Court lacks subject matter jurisdiction over claims against these Defendants, it need not reach the issue of whether there exist any circumstances under which these Defendants could be considered employers under the ADEA. The Court **DENIES** Defendants' 12(b)(1) Motion as to Defendant Clearview. The Court **GRANTS** Defendants' 12(b)(6) Motion as to the wrongful discharge claim and **DENIES** it as to the failure to hire claim. Additionally, the Court **DENIES** both parties' Motions to Award Fees, Dkts. 6, 13.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 8, 2016

Raymond A. Jackson
United States District Judge