IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES ZURAF

    Plaintiff,

    v.

CIVIL ACTION NO. 2:15-cv-559

CLEARVIEW EYE CARE, INC.,
    D/B/A COASTAL VISION,

    Defendant,

## MEMORANDUM ORDER & OPINION

This matter is before the Court on Defendant's Motion for Attorney's fees. The parties have fully briefed this matter, and a hearing is unnecessary to resolve the instant Motion. For the reasons stated herein, Defendant's Motion for Attorneys' Fees is **GRANTED**.

## I. BACKGROUND

### A. FACTS

This action arises from Defendants' alleged wrongful termination and the failure to hire Plaintiff because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Compl. ¶ 11. Plaintiff was born on September 15, 1954, and he worked as a Virginia State Licensed Optician. Compl. ¶¶ 2, 20. In April 1997, "Dr. Hal W. Breedlove, O.D., P.C. operating under the trade name Coastal Vision Center ("Coastal Vision") hired Plaintiff as Practice Manager." Compl. ¶ 22. As Practice Manager, "Plaintiff managed the daily operations of Coastal Vision," and his "main duties included, but were not limited to: hiring and firing of staff, preparing payroll, handling human resources issues, negotiating and executing vendor contracts, purchasing frames, lenses, and equipment, and resolving patients'

1

complaints." Compl. ¶¶ 24, 25. The Complaint alleges that Dr. Breedlove "was the only owner of Coastal Vision, but he employed Wang, S. Nilsson, and Lin-Nilsson as optometrists at his practice." Compl. ¶ 28. The Complaint further avers that "Defendants subjected Plaintiff to disparaging comments about his age." Compl. ¶ 30.

According to the Complaint, "[i]n or around May of 2013, Wang, S. Nilsson, Lin-Nilsson announced that they, together with Beach and Clearview, were purchasing Coastal Vision from Breedlove" and "introduced themselves as the 'new owners' of Coastal Vision to all employees, vendors and patients." Compl. ¶¶ 31, 32. Then, "[o]n or about August 16, 2013, Wang and Lin Nilsson conducted a meeting with Plaintiff to discuss his employment under the new ownership of Coastal Vision. Wang and Lin-Nilsson stated that upon completion of the sale of the practice. Plaintiff would be terminated." Compl. ¶ 33. Plaintiff claims that he "stated he was interested in remaining with Coastal Vision in the capacity of an Optician at lower pay rate." Compl. ¶ 34. The Complaint alleges that "[o]n or about August 16, 2013, Plaintiff applied for an Optician position." Compl. ¶ 35. Although "Wang stated that he would discuss the option of hiring Plaintiff as an Optician with the other owners, and that he would set up a meeting to interview Plaintiff," Compl. ¶ 36, "[o]n August 27, 2013, S. Nilsson informed Plaintiff that he would not be re-hired or considered for any position at Coastal Vision, including both the Practice Manager and Optician positions," Compl. ¶ 38.

Breedlove's sale of Coastal Vision to Clearview, Beach, Wang, S. Nilsson, and Lin Nilsson occurred on or about September 6, 2013. Compl. ¶ 39. That same day, "Clearview, Beach, Wang, S. Nilsson, and Lin-Nilsson terminated Plaintiff." Compl. ¶ 40. According to the Complaint, "all of the employees of Coastal Vision, with the exception of Plaintiff, were interviewed by Wang, S. Nilsson, Lin-Nilsson, and Beach," and were not terminated. Compl. ¶¶

2

43, 44. Both the Practice Manager position and the Optician position were "filled by a person who was substantially younger than Plaintiff." Compl. ¶¶ 71, 72.

The Complaint additionally alleges that "at the relevant times alleged herein, Defendants were operating either as Clearview Eye Care, Inc. or were operating as general partners." Compl. ¶ 4. Furthermore, "Clearview has at least 15 employees." Compl. ¶ 5. According to the Complaint, "Defendants qualify as an 'employer' as set forth in the Age Discrimination in Employment Act of 1967 [("ADEA")], as codified, 29 U.S.C.§§ 621 et seq." Compl. ¶ 10. Plaintiff claims he "filed a Charge of Discrimination against Clearview Eye care, Inc. [sic] d/b/a Coastal Vision and its owners for the unlawful employment practices set forth herein with the United States Equal Employment Opportunity Commission ("EEOC") and did so within the required time limits specified by law and regulation." Compl. ¶ 16. The EEOC sent Plaintiff a Notice of Right to Sue on or about September 28, 2015. Compl. ¶ 17; Compl., Ex. 1. The Dismissal and Notice of Right to Sue states that Plaintiff "may file a lawsuit against the respondent(s);" however, it does not appear that the Notice identified the respondent(s) by name. Compl., Ex. 1. B.

### B. Procedural History

Plaintiff filed the Complaint on December 23, 2015. ECF No. 1. Defendants filed a Motion to Dismiss and Motion to Award Fees on February 26, 2016. ECF Nos. 4, 6. Plaintiff responded in opposition to both motions on March 8, 2016. ECF Nos. 11 and 12. Plaintiff also filed a Cross Motion to Award Fees on March 8, 2016. ECF No. 13. Defendants replied on March 11, 2016, ECF Nos. 15 and 16, and the Court partially granted Defendants' Motion to Dismiss, and denied Defendant's Motion for Attorney Fees on August 9, 2016. ECF No. 17.

Plaintiff moved for Default Entry against the remaining Defendant on August 25, 2016, ECF No. 18, and the Clerk entered default judgment that same day pursuant to 55(a) of the Federal Rules of Civil Procedure. ECF No. 19. Defendant filed a response in opposition to the Clerk's default entry on August 26, 2016, ECF No. 20, and filed a Rebuttal Brief on August 29, 2016. ECF No. 21.

Defendant filed an Answer to the Complaint on September 20, 2016. ECF No. 25. The Court issued a Rule 16(b) Scheduling Order on October 27, 2016. ECF No. 27.

Defendant moved for a Settlement Conference on November 4, 2016. ECF No. 28. Defendant also moved for clarification of the Court's Order on November 5, 2016. ECF No. 29. Plaintiff responded in opposition to both motions on November 14, 2016. ECF Nos. 30 and 31. Plaintiff also moved for attorney fees, and filed a supporting memorandum, on November 14, 2016. ECF Nos. 32 and 33.

Defendant filed Rebuttal Briefs for both the Motion for Clarification and the Motion for Settlement Conference, ECF Nos. 34 and 35, as well as a response in opposition to Plaintiff's Motion for Attorney fees on November 17, 2016. ECF No. 36. The Court denied Defendant's Motion for a Settlement Conference on November 18, 2016. ECF No. 37. The Court also clarified its Order on December 19, 2016. ECF No. 38.

Plaintiff moved for reconsideration of the Court's Clarification Order and filed a supporting brief on January 5, 2017. ECF No. 39 and 40. Defendant responded in opposition to Plaintiff's Motion for Reconsideration on January 17, 2017. ECF No. 41. Defendant also moved for a Protective Order and filed a supporting brief on January 20, 2017. ECF No. 42-44. The Court denied Plaintiff's Motion for Reconsideration. ECF No. 45. Plaintiff filed a memorandum in opposition to Defendant's Motion for Protective Order. ECF No. 46.

Plaintiff also moved for attorney fees and filed a supporting memorandum on January 31, 2016. ECF No. 47 and 48. Defendant filed a Rebuttal Brief in support of his Motion for a Protective Order on February 1, 2017. ECF No. 49. Defendant also filed a memorandum in opposition to Plaintiff's Motion for attorney fees on that same day. ECF No. 50.

Defendant moved to Amend its Answer and filed a supporting memorandum on February 3, 2017. ECF No. 51. Plaintiff filed a Joint Stipulation of Dismissal on February 3, 2017. ECF No. 53.

Defendant moved for Attorney fees on February 17, 2017, ECF No. 54, and filed a supporting Memorandum on February 18, 2017. ECF No. 55. Plaintiff filed a response in opposition to Defendant's Motion for Attorney Fees on February 27, 2017. ECF No. 56. Defendant filed a response in support of its Motion for Attorney Fees on March 2, 2017. ECF No. 57. Defendant also filed a letter stating its availability for a hearing in the event that the Court so desires.

## II. DISCUSSION

Defendant asserts that it is entitled to attorney fees because (1) Plaintiff and his counsel acted in bad faith and was unreasonable and vexatious in multiplying the proceedings in this frivolous case; (2) Plaintiff's counsel intentionally increased fees; and (3) Plaintiff's counsel failed to do her due diligence prior to filing suit. ECF Nos. 54 and 55.

Under the American Rule, each party must bear his own attorney's fees and costs, absent explicit Congressional authorization to the contrary. *Davis v. Target Stores Div. of Dayton Hudson Corp.*, 87 F. Supp. 2d 492, 494 (D. Md. Mar. 16, 2000) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)). In certain circumstances, however, a defendant may recover reasonable attorney's fees and costs when a plaintiff continues to pursue unsupported

5

claims. *Davis*, 87 F. Supp. 2d at 494. The legal bases for such awards are various, including the so-called "bad faith" exception to the American Rule, various statutory provisions, and Rule 11 of the Federal Rules of Civil Procedure. *Id.*

Pursuant to a court's inherent powers, it may impose sanctions against a plaintiff who has pursued a claim that is vexatious, wanton, or made in bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Colbert v. Yadkin Valley Tel. Membership Corp.*, 960 F. Supp. 84, 86 (M.D.N.C.1997). While some courts have found that bad faith must be found before attorney's fees may be awarded in a "vexatious" case, others have held that bad faith is not required. *Compare Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir.1998) (bad faith is prerequisite) with *Gilyard v. South Carolina Dept. of Youth Serv.*, 667 F. Supp. 266, 278 n. 5 (D.S.C.1985) (bad faith not required). Ultimately, the continuation of litigation of frivolous claims amounts to "bad faith," and justifies a fee award. *Davis*, 87 F. Supp. 2d at 494; *see also Colbert*, 960 F. Supp. at 86.

"Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended, many terms of which have been applied to ADEA cases, a prevailing defendant may also be awarded attorney's fees when a plaintiff's claims are shown to have been frivolous or without merit." *Davis*, 87 F. Supp. 2d at 494 (citing *Hoover v. Armco, Inc.*, 691 F. Supp. 184, 187 (W.D.Mo.1988), aff'd 915 F.2d 355 (8th Cir. 1990); *Christiansburg Garment v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 98 (1978); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)). A claim is "frivolous" if a plaintiff presents no evidence to support his claim or if he has gone forward on the basis of no colorable legal theory. *See Gilyard*, 667 F. Supp. at 277. Under the *Christiansburg* standard, bad faith on the part of the plaintiff is not a condition of an award of fees. *See id.* at 278 n. 5. Such an award should only be upheld "where the action

brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg*, 434 U.S. at 421.

An additional statutory basis for awarding attorney's fees is found in 28 U.S.C. § 1927, which provides that a court may sanction any attorney or other person admitted to conduct cases in federal court who are unreasonable and vexatious in multiplying the proceedings. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir.1999).

Rule 11 of the Federal Rules of Civil Procedure, another possible source of attorney's fees, allows sanctions for pleadings submitted for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. FED. R. CIV. P. 11(b). The existence of the Rule has been held not to preclude a court from acting under its inherent or statutory powers and vice versa. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Marley v. Wright*, 137 F.R.D. 359 (W.D. Okla. 1991); *Schutts v. Bently Nevada Corp.*, 966 F. Supp. 1549 (D. Nev. 1997).

Courts have also found various justifications for making attorney fee awards in ADEA cases. *See, e.g., EEOC v. Clay Printing Co.*, 13 F.3d 813 (4th Cir.1994) (U.S. Government could be assessed attorney's fees under Equal Access to Justice Act for frivolous ADEA claim); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428 (11th Cir.1998) (plaintiff who exhibited bad faith in pursuing ADEA case could be assessed fees); *Colbert*, 960 F. Supp. 84 (M.D.N.C.1997) (both bad faith exception to American Rule and *Christiansburg* standard warranted fee award to prevailing employer in ADEA case). While the Fourth Circuit has yet to decide if and when the ADEA itself permits such an award, this Court need not rule on the matter—in part because the parties voluntarily settled, and because the bad faith exception to the American Rule and the *Christiansburg* standard permit an award against a plaintiff when the continued litigation of his

claim was frivolous. *See Hoover v. Armco, Inc.*, 915 F.2d 355, 357 (8th Cir.1990); *Davis*, 87 F. Supp. 2d at 495.

Here, Plaintiff pursued his age discrimination case well after Defendant moved to dismiss Plaintiff's Complaint on the grounds that the Court lacked subject matter jurisdiction—namely that Plaintiff failed to establish that Defendant qualified as an ADEA employer. In the Complaint, Plaintiff alleges that "Clearview has at least 15 employees." Compl. ¶ 5. Pursuant to the ADEA, however, an employer is "a person engaged in an industry affecting commerce who has *twenty or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . ." 29 U.S.C. § 630(b). In response to Defendant's Motion to Dismiss, Plaintiff not only quotes this statutory requirement, but fails to address this issue. *See* ECF No. 11 at 7.

At a minimum, when Defendant asserted lack of subject matter jurisdiction on the ground that Plaintiff failed to establish that Defendant qualified as an ADEA employer, Plaintiff should have conceded that his ADEA claim was no longer viable. Instead, Plaintiff allowed the litigation to go on for more than one year. As the result of Plaintiff's actions, his claim morphed from an arguably appropriate one into vexatious prosecution, which ultimately amounted to bad faith. *See Davis*, 87 F. Supp. 2d at 495. Defendant shares some blame for the protracted litigation because Defendant did not zealously pursue its claim that the Court lacked subject matter jurisdiction. Accordingly, the Court finds that Defendant is yet entitled to an award of attorney fees.

**Attorney Fee Award:**

Defendant has moved for $49,384 in attorney fees, and $635 in costs ($100 for service of out-of-town witness subpoena of John Rybarczyk; $35 in courier expenses; and $518.25 for 2073 copies made in connection with depositions and discovery). ECF No. 55-8 at 2 and ECF No. 55

8

at 4. In determining attorney fees, the court has full discretion over the amount a party receives. *Davis*, 87 F. Supp. 2d at 495. While the starting point for determining an appropriate award is ordinarily the hours reasonably expended by a party's counsel multiplied by a lodestar rate, the Court may adjust this figure upward or downward to accommodate Plaintiff's financial condition, his motive in bringing the lawsuit, and the frivolousness of the case. *Id.*; *see also Gilyard*, 667 F. Supp. at 278. In making such determinations, the Court must be cautious not to assess fees which may serve to discourage other plaintiffs with deserving claims from coming forward while seeking to deter frivolous claims. *Davis*, 87 F. Supp. 2d at 496; *see also Hutchinson*, 994 F.2d at 1081 (4th Cir.1993).

Here, Defendant's counsel has only provided the court with a detailed summary of her billable hours and a personal affidavit regarding attorney fees, ECF Nos. 57-1 and 55-8, which is insufficient for an attorney fee determination. Accordingly, Defendant's counsel is directed to provide the Court with an affidavit from an attorney outside of counsel's firm who can attest to the reasonableness of counsel's hourly rate and that counsel's rates coincide with market rates of attorneys of similar skill and for similar work. Once the Court receives the requested documentation, the Court will issue an Order regarding Defendant's attorney fee award.

### III. Conclusion

For the reasons stated herein, Defendant's motion for attorney fees is **GRANTED**. Within **TWENTY** (20) days of the date of this Order, Defendant is directed to provide the Court with a supporting affidavit regarding counsel's attorney fees.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 27, 2017

Raymond A. Jackson
United States District Judge

9